Good afternoon, Judge Thomas, members of the court. My name is Cary Sandman. Along with my counsel, co-counsel Amy Krause, I represent Eric Mann. In these proceedings, Eric Mann seeks sentencing habeas relief on an ineffective assistance of counsel claim alleging failure to investigate and present mitigation. I intend that claim to be the principal focus of my argument. Mr. Mann asked this court to find that the state court adjudication of the subject claim resulted in a decision that was contrary to clearly established federal laws determined by the Supreme Court, thus lifting any bar on federal review under 28 U.S.C. 2254 D. Finally, Mr. Mann will request the court grant relief on the claim after reviewing the claim de novo. The state court decision misapplied Strickland rule and was contrary to Strickland in at least three ways. Number one, the state court held Mann to the requirement that he prove additional evidence would have changed the sentence imposed. This is contrary to and violates Strickland's reasonable probability test. Number two, the state court adopted a causal nexus requirement to exclude substantially all of Mr. Mann's new and the old sentencing mitigation evidence from consideration combined. This part of the decision is contrary to Eddings and violates Strickland requirement that the totality of mitigation evidence be considered. And number three, the state court decision failed to expressly reweigh the combined mitigation from the sentencing and the PCR proceeding against the aggravation. Under the Eddings, under the Mr. Mann's, did he ever assert below a causal nexus claim under Eddings versus Oklahoma? He did not, but we are not seeking habeas relief from this court on the basis of an Eddings violation. We are seeking relief under Strickland, and we are arguing that this court is entitled to review the claim on the merits, because there's no bar to relief under 2254D. With respect to the Eddings claim specifically, what is it that you claim that counsel did that was deficient? Well, again, we're not seeking, we're not alleging that counsel did anything deficient in respect to an Eddings claim. We are simply urging the court to review this claim de novo without the bar that would be applicable to review under 2254D. I'm sorry? What claim are you saying we should review de novo? The Strickland claim, the failure, the claim that trial counsel failed to investigate and present mitigation. That is the claim. Are you making an Eddings claim? No. There's no dispute about that, as I understand it, with regard to the representation prong of Strickland. The dispute is with regard to the prejudice prong of Strickland, is that right? In other words, the State court didn't address the representation part of Strickland, and therefore I don't understand the government to be arguing that there should be a pedeference as to that. Is that right? That is my understanding, Your Honor. Okay. So we're only talking about prejudice. And the causal nexus issue, as I understand it, comes in primarily as an explanation for what standard the State PCR court applied in determining whether there was prejudice. Is that right? Which is not exactly where Eddings usually comes in. That's true. But it's sort of an embedded Eddings argument. I mean, that's, I think, why my colleagues are asking this question. And, in fact, your second enumerated argument here really is the causal nexus error that you're alleging, right? Yes. But just a minute. I thought you just said you're not making an Eddings claim. And that is true. In other words, we're not seeking to relief on a claim that Eddings v. Oklahoma was violated. What we are saying is that there are three defects in the State court decision that allow this court to say that 2254D.1 is not a bar to reviewing the claim, the Strickland claim on the merits. Well, the State court, when they made the decision, it says to succeed on the claim, the defendant must show that counsel's performance is deficient, as defined by prevailing professional norms, and the deficient performance resulted in prejudice to the defense. Isn't that exactly what the court said? The court did say that, yes. Okay, so that is, as I understand it, word for word, the Strickland standard, is it not? Well, the Strickland... Is it not? Yes, it is. It is part of the Strickland standard. And not only that, but right after that, the court followed that language with a side to Arizona v. Nash, did it not? Yes, it did. And Arizona v. Nash specifically says it is a case that specifically adopts the Strickland's two-pronged approach word for word, right? Correct. So, therefore, when the court has said what the standard is, the court has cited the case that specifically adopts the standard, then the court says, and man failed to show prejudice. And he said he failed to show prejudice because, he said counsel did present evidence of social history, more evidence would not have changed the sentence. So here's the court who is determining, who had the first determination to make, and he says, now based on my review, you have presented what evidence you have to, it wouldn't have changed the sentence. I was there. How does that differ from applying Strickland as it ought to be applied? Your Honor, Judge Smith, what the state court did in its decision, and this is at ER 6970, the record... Well, answer my question. He said, and I read it, counsel did present evidence of social history, more evidence would not have changed the sentence. That's exactly what a judge on post-conviction relief would have to determine, is it not? Your Honor, I guess, respectfully, I disagree with that in the sense that the Strickland test calls for the court to make an objective assessment of whether there's a reasonable probability for a different outcome, and the Supreme Court has said... That's exactly what the court said. There's no reasonable possibility it would not have changed the sentence. But that is not the test. The test, Mr. Mann is not required to demonstrate in connection with the Strickland claim that the sentence would have changed. The Supreme Court has said that in Rompia, and I believe in the Williams case. That's just not the burden. We're arguing about his words? I mean, what he did, well, we can go to the mental health evaluation. He said there might be more mental health evaluations before sentencing, including Hinton's. But that wouldn't have changed the sentence. And in fact, he went on to say Hinton's report is flawed. Because his only conclusion has merit if the defendant was under the influence of cocaine or drugs, and there's no evidence that he was. So again, saying there is no prejudice. That's the application of Strickland, isn't it? Your Honor, it is not the reasonable probability test. Counsel, I'd like to ask a slightly different version of the same question. There seems to be an argument, or at least a version of your argument that says because the court said no probability, it could not possibly have been using the standard of reasonable probability. But I guess I just don't follow that as a matter of logic. If I ask you, is there a reasonable probability of rain today, and you tell me, well, actually, there's zero probability of rain. That's fully responsive, isn't it? I mean, it doesn't say that you haven't answered the question that is properly asked. The state court never said there was no probability. Well, it said the sentence would have been exactly the same, no matter what, which is another way of saying there's a zero probability that it would have changed. And I guess I don't understand why that sentence or that way of phrasing it suggests a wrong standard was applied. There's something else in the decision that I would hope the court would look at. And that is the court was deciding two newly discovered evidence claims and two Strickland claims. And the state court provided a definition for what a newly discovered evidence claim would require in terms of proof for prejudice. And the court defined the standard for demonstrating prejudice on a newly discovered evidence claim as a requirement that Mr. Mann prove that the new evidence claim would not have changed the first sentence. The court then stated in deciding the Strickland claim that for that reason, and the court said for that reason it was referring to an earlier decision on a newly discovered evidence claim, the court found it would not have changed the sentence. So the... It said in addition, didn't it, before it went back to those other issues? No, it said... Well, it said additional evidence that pertains to the accident where this court found it would not have changed the sentence. And for that reason, he was in prejudice. So the court gave one definition of prejudice with respect to these four claims. And the definition was that the evidence wouldn't have changed the sentence. The court then imported that into each of its decisions. In fact, the reason that was given with regard to issues three and four was that they hadn't proven the existence of a causal connection. And to me, that reason is that reason. That is, they hadn't proven the existence of a causal connection. And that is also why he... It's kind of all of a piece. It's an explanation for why the whole thing is so truncated, because as far as this decision-maker was concerned, if they didn't prove the existence of a causal connection, that was the end of it, which is what he said as to issues three and four, and what he referred back to in sevens. So my question is, does Eddings apply to that prejudice determination, or is it a different realm? I think that absolutely the court's decision demonstrates that it applied a causal nexus test, as it was required to do under prevailing law in Arizona under State v. Hoskins. And in fact, the State argued that the PCR court should apply State v. Hoskins. State v. Hoskins had just been issued a few months earlier by the State Supreme Court. The PCR court, I think, very clearly was following what the State Supreme Court had just told it to do. Absolutely. But my question, counsel, is I wonder if I could circle back to where was that issue raised to the State Supreme Court? It was not raised, Your Honor, but I don't believe that ---- How did it get there, then? How were they given a fair opportunity to correct that error? The claim that was exhausted in the State Supreme Court was a claim that the trial counsel failed to investigate and present mitigation. That is the Federal claim at issue in this case. That is the claim to be decided by this court. That's very different than an Eddings claim. Well, again, we're not seeking relief under Eddings. But, counsel, with all respect, that is the second argument you've enumerated today, and several of us have asked you to focus on that. You said the causal nexus requirement was adopted by the state court incorrectly, and Judge Berzon and several of my colleagues have tried to focus you on that. And it either is or is not the argument you're making. It wasn't raised in the state court, but I don't think that arguments advancing the showing that D-1 was violated need to be exhausted in state court. There's no case that says that. No, but what has to be exhausted is the question of what was wrong, whether there was prejudice under Strickland. Right? That's what you had to exhaust. Correct. And in the course of making that argument, did you have to say, and did you say, yes, there was prejudice because there is no causal nexus test, or is that for the government to argue? In other words, that's how it would have come up, right? It would have come up as a reason why the trial court was wrong in its prejudice determination under Strickland. The government advanced the argument in the state court that none of Mr. Mann's new or virtually all of his old evidence could be considered because of state versus Hoskinson. So it was before the state court. So it was before the state court is the right answer, no? Yes. Why did you give that answer? I'm sorry. Well, the fact that it was in front of the state court is really not important if you're not going to advance it here. It seems to me that you're not advancing it here. What you're really saying is that the court, for some reason, did not establish the proper test for prejudice. Isn't that what you're saying? That is one of the arguments, yes. Well, as I understand it, that's your main argument here. That somehow the district court did not establish the right test for prejudice and therefore could not have made the findings that it did. And yet, I mean, if that's not your argument, I want to hear it, but that's the way I saw your argument. I didn't see any addings issue in this or causal connection at all. Well, certainly in our brief to this court, we certainly argued that the state court applied an improper nexus test to exclude all of Mr. Mann's mitigation evidence from the Strickland assessment. That's certainly argued in the briefs. I'd like to ask sort of the, take a step back and ask you, what specifically is the prejudice? Under your version of the standard, why is there any probability at all that the mitigating evidence or the new evidence or all of it taken together would have made any difference? The fundamental problem that occurred at Mr. Mann's sentencing was that there were major differences in the standard. Major inaccuracies in the determination of his moral culpability. In Williams, Wiggins, Rompey, and Porter, none of those cases did the defendant ever show a causal nexus to the crime. In every one of those four U.S. Supreme Court cases, the focus was on the defendant's moral culpability. Here, Mr. Mann was determined to be antisocial personality disorder with implications for future dangerousness. He was determined to be incapable of remorse. Both of those findings made at the sentencing were incorrect. He's not antisocial personality disorder. The offense wasn't driven by antisocial personality disorder. He's fully capable of empathy. How does that square with the district court's specific statement that this crime was committed strictly for pecuniary gain? And isn't that a specific assertion or finding of moral culpability? Well, certainly there's a tremendous amount of legal culpability there. And in every premeditated first-degree murder case, Porter, Sears, Williams, all of these cases come to the court with... But I'm asking you about that, about how you square the district court's conclusion that the crime in this case was committed for pecuniary gain and not for any other reason. And why doesn't that overshadow all these other things? Well, the Supreme Court tells us that what's important is the determination of... Mitigation really, if it's not related to the nexus to the crime, affects the assessment of the moral culpability of the defendant. And here, unknown to the sentencing court, the defendant suffered from traumatic brain injury. We know that goes to his moral culpability. We know that from all of the evidence admitted at the original sentencing, Mr. Mann's upbringing... But there was evidence about his family background, and there was evidence about the accident before the sentencing court. Not the same evidence, but there was of both, correct? And now, I think your original question was, you know, why is there prejudice? And, of course, all of that... From the things that were not, in your view, considered or considered correctly. I mean, the fundamental flaw at the sentencing was that the representation of Mr. Mann's character was fundamentally flawed. I'm sorry, but I didn't hear that. The representation of what? Mr. Mann's character was fundamentally flawed and erroneous. But how is it going to make any difference? You've got the same judge sitting there and saying he behaved the same way before and after the accident. Now, you can come in with all sorts of more scientific evidence about the accident and the brain damage, but that observation still sits there. I have trouble understanding how we think the same judge has a reasonable probability of reaching a different conclusion based on what he said. Well, Judge Clifton, part of the answer to that is, once we demonstrate, and I believe we have demonstrated, that the state court decision is contrary to clearly established federal law, which I think it has because it replied the wrong Strickland standard, then applied to carousel nexus test, you're then free to review this claim de novo. You're not free to. You must review the claim de novo, and you can make your own assessment of the facts. Why should we think that there was a reasonable probability of a different result if the sentencing judge is the same person speaking here as the PRCR court and says, he behaved the same way before and after the accident? So how is this evidence about brain damage going to affect the result? Well, I think ultimately you have to make your own assessment of what the record showed and what I would argue. I'm asking you, tell me why I would think the same judge would have made a different conclusion. The record shows that before this accident in 1985, Mr. Mann never engaged in behavior like this. He had a, in 1982, which was seven years. Well, he did have a couple of gun crimes, and he did engage in other forms of violence. He never killed anybody. But arguably it doesn't really get any better. He killed two people in a car accident and then two people in this case. That puts the numbers up to four. I'm just even sort of wondering how mitigating is the fact that he killed two people in a car accident before. I'd rather not even know that. Tragically, in the 1985 accident, he was towing a vehicle and the tow bar broke. And the Jeep that Mr. Mann was driving went up on the guardrail and fell down into a canyon and two people were killed. In any event, that evidence was in the earlier record, that there was the accident. To me, actually, the most troubling part of this is that the judge seemed convinced that he was completely unremorseful, particularly about that, and that seems to have been totally wrong. I mean, that's the one piece where you seem to have had clear new evidence as to his feelings about that accident. So the question is, how much weight do we give to that in terms of what would have happened? Well, if you look at the state court decision, other than the court's consideration of whether there was causation, the court didn't consider any of that mitigation that you've just mentioned with respect to his capacity for empathy. It didn't consider the evidence that the diagnosis of antisocial personality disorder was incorrect. And yet it didn't consider any of the evidence presented at the original sentencing. And all of that signals another problem with the state court decision. The court gave no weight to any of the mitigation, which is, under Porter v. McCollum, another problem with the state court decision. There's nothing that requires the judge to be persuaded by mitigating evidence. I mean, even Eddings makes that clear. And under Strickland, the court said that the judge making the Strickland assessment has to ask whether there's a reasonable probability that an objective reviewer would be impacted by the evidence. I've got a siren coming out of the speaker here. I'm sorry about that. Yeah, it's from Judge Watford's office, maybe. You're down to about six minutes. Do you want to reserve? I have one question. The panel's decision seemed to hint on the idea that the trial judge should not have evaluated the post-conviction relief petition. Do you make that argument, or is that just their idea of a good time? I think what the panel was correctly saying was that the focus isn't just on what Judge Kelly thought, but the focus also has to take into account what the Arizona Supreme Court would have done, because they independently review. Well, but that's not the question. Where you're going is a different one. I'm just suggesting that the trial court should not have evaluated this petition, because they were the original trial court. I didn't read the panel decision that way, Judge Smith. All right, and you don't make that argument. Correct, I do not. Because there are a lot of Supreme Court, even we in the Supreme Court say we even give more deference to a sentencing judge, right? Very good. We'll hear from the State. Thank you, Your Honor. Good afternoon. I'm John Todd with the Arizona Attorney General's Office. We represent the warden in this matter. The key to this case, I believe, is in the evidence and the claim that we're really talking about here. The theory at the PCR court was that this accident that happened four years before the double homicide somehow had some effect that was mitigating. And they tried to show that. And as Judge Owen pointed out, the record didn't support it. The fact that prior to the accident, he had been convicted of aggravated assault for pointing a handgun at somebody. Prior to the accident, he had been involved in two shootings. Prior to the accident, he had beaten violently his ex-wife. Prior to the accident, the records show that he was a habitual criminal. That, as Judge Graber pointed out, this was an intentional assault. This was an intentional, premeditated crime. He shot two young men for $20,000 in a drug rip-off after spending Thanksgiving dinner with his family, with his mother, then going to set up this drug deal. Sotomayor, I have a question about the you were focusing on the arguments that were made at the original PCR court. Was the defendant's argument a nexus type of argument? In other words, was it the defendant who said the accident is important because it shows why I did this? And I guess what I'm trying to get at is whether the court's view of this as nexus or no nexus. Was responsive or non-responsive to the argument that was being made by the defense? I think what the court did was look at the evidence. And as you know, under the law, the defendant or the prisoner has to prove the mitigator. And he looked at the law. He looked at the evidence that was produced in court. And concluded that the defendant had not proved this was mitigating this accident, this 1985 accident. The fact that he had an accident in which two people were killed, he was the only driver. The fact that he had what he says is a minor concussion, and that was it. That in itself is hardly mitigating, but the court considered it. Considered that evidence and concluded this didn't have any effect on the accident. Excuse me, on the sentence. What he concluded was that it didn't have any effect on the crime. Yes, he said it didn't have any effect on the crime. That's the causal nexus problem. No, excuse me, Your Honor, I don't believe that is. That in order to have evidence that is mitigating, the defendant has to prove that it is, in fact, relevant mitigating evidence. Yes, I understand, but there is a bit of a tension here. Wasn't it the state's position at the PCR level in the state's filing urging the court to apply Hoskins, right? Yes, yes, it was. Well, there's no question that at the time the Arizona Supreme Court required a causal nexus, right? We disagreed. Well, they had Hoskins out there. It was just a few months earlier, counsel. And there's a bunch of other cases, and even the McKinney talks about in the sense of weighing. But your office argued, or whoever it was, argued to the PCR court that if it didn't have an effect on the offense, that it wasn't mitigating evidence. Based on the evidence. If you look at the evidence. I'm sorry, I don't understand that. Okay. What they were saying is that this night, this accident occurred four years earlier, had some effect, some mitigating effect. And they offered testimony from a Dr. Comer. Well, but they also, as I understand it, said that, A, it demonstrated his remorse, because apparently the records said that he had a grief reaction. And his girlfriend said that he was totally, you know, remorseful and so on. And they also said, excuse me, that it had an effect on his general psychological state, which could have been mitigating evidence. So I don't understand what you mean by the evidence. As far as remorse goes, the, if you read the pre-sentence report, the pre-sentence person questioned his stated remorse. If the judge's opinion was that for four years he showed no remorse, and I believe. But he also said originally, the judge, he didn't, that he had no remorse about that accident, and that was not true, apparently. Well, no, Your Honor. That's, that's, it's depending on who's deciding what's true or not. The judge, the judge looked at his autobiography. Okay, let me revise it. There was evidence, new evidence that it wasn't true, and the PCR, on the PCR level, the judge said nothing about it. I don't believe there was new evidence that it was true, other than opinionated evidence of Karen Miller. But she couldn't recall him ever saying he was remorseful. I thought there was something in the medical records that said he was having a grief reaction. There might have been something in the medical records. There was. Counsel, if you get this far into the argument, it seems to me that the State has a real problem, because, because at the PCR level, they had Dr. Comer's report, and Dr. Comer's report said that the State expert hadn't considered traumatic brain injury at all, and that the diagnosis of social, antisocial personality disorder can't be made without ruling out the traumatic brain injury. So it seems to me that, if you get that far in, it seems to me this is a pretty tough argument for the State. Well, the problem, if you, if you look at the record, the problem was that Dr. Comer had no evidence that he had any brain, traumatic brain injury. The only thing there was, was the statement that he had a mild concussion. Well, after he had done testing, Dr., I mean, that's not quite right. Dr. Comer had done quite a bit of testing, and including the one test, I'm sure you're very familiar with it, indicating traumatic brain injury, because he had a response that only .06 percent of people would have and whatnot. What about that? It seems to me inconsistent with your statement that there was no evidence. Well, first of all, if the, the doctor, the only evidence in the medical records was not that he was treated for any head injury, but he was treated for a broken leg. The evidence, Dr. Comer, the defense never shared those medical records with Dr. Comer, if you read the testimony. Dr. Comer, when he was testifying, was testifying as a hypothetical, that if he had had brain injury, he would have been treated for a broken leg. In that accident, by the time in 2001, when he was testifying, that there were subtle effects. But he, he also testified that some of these results from the test could have been from his drug use. The, the evidence was slight, and the trial, the charge, excuse me, the trial judge didn't believe it. That's different than saying there was no evidence of traumatic brain injury. It's quite different. Did the, did the state's expert rule out traumatic brain injury or consider it? The, there was no state expert. There was, at the beginning. Well, Dr. Flint, I, I, you're right, the court's expert, the original expert. He found no evidence of any sort of, any sort of brain abnormality. The, Dr. Hinton. Can you cite to a place in the record where he ruled out traumatic brain injury? No, I can't say, say that he ruled it out. But I can cite you to ER 1340, where Dr. Flint's report in 95, closer in time, on review, no sign of any emotional disorder or mental defect, nor a limitation of intelligence or cognitive processing, or anything except an intelligent, verbally fluent, emotionally controlled person. So the, Dr. Comer had suspected. Well, his, his hypothetical was, if he had traumatic brain injury, well then, it was, by this time, there were some subtle effects to it. But it's, it's understandable why that would not be something that would change a result. Going back to the, the first issue as to whether this, the state court used the wrong standard. The standard the state court used, as was pointed out, the, the court never cited a contrary standard. To Strickland in deciding this IAC claim of sentencing. But affirmatively, how do you, how do we know that the court applied the Strickland test? Well, isn't, isn't the question just the opposite? What evidence is there in the record, other than speculation, that the court used some other test? The court, when it, it decided that the, there hadn't proved any sort of connection between the accident and the double homicide. It did not cite to any newly discovered evidence standard in that discussion. It simply looked at the record, found it wanting, and said. Or lack of causal connection, that's the problem. I mean, if, if, if the trial court had not mentioned it didn't have anything to do with the crime, I, I think your argument is very strong. But the, there does seem to be an element in there where the trial court, and I think properly under Arizona law at the time, is saying this, this has no, nothing to do with the crime. And therefore, not, it's not appropriate evidence. And Wiggins and Rompillo and all those cases basically say everything comes in a mitigation, so. Well. That's the issue. Every, all relevant mitigation has to be considered. And that is exactly what this trial court did. It considered it. If, if the court were to conclude that the constraints imposed by the state law at that time meant that this accident evidence was considered only as it related to causing the crime and not more generally, what result? Do we simply review de novo whether there was or was not any strickland prejudice? Is that the right answer? If I understand the court's question correctly. No. That, that doesn't take it out of an analysis. Well, what would we do? You would, you would look at the decision. Look at this, the decision here was that there was no ineffective assistance of counsel at sentencing. And then you would apply EPA and come to your result. Well, what the, I guess I'm having some difficulty coming, figuring out where this causation thing fits into our analysis. The, the court went through the proper explanation. It stated the strickland standard and then cited the state case that adopted strickland. And then it said, and I find no prejudice. Okay. So that's the part that you're relying on. I think the difficulty comes because there's also seems to be this overlay that in examining the question of prejudice, that the court was hamstrung by this idea that, you know, there's no prejudice. And that mitigation had to be tied to causation. And so my question to you is, and I'm still not really sure I understand your answer, is wouldn't we simply review the strickland prejudice prong de novo? Isn't that the only thing that would change if we found that the court used too narrow a view of prejudice? Isn't that the only thing that would change? If the court used too narrow of a view of prejudice. Wouldn't we then just decide, was there prejudice? Well, I think, I think there is, is an argument that there's one more step before you get to the de novo review. And that, that step is deciding that the decision itself was not, was not unreasonable. And... We're on the second prong now. I'm following Judge Graber's question because it's mine too. Wouldn't we then reweigh the evidence ourselves as to prejudice? But that's getting us beyond the first prong. Right. And I'm sure I'm not being very articulate. It could be a little more helpful to you because I don't know where I am on that. I mean, this issue just seems to have come up in this kind of, I don't know what word Judge Christian used, embedded way. And I'm trying to figure out what we do with it if we decide that, in fact, there was Eddings error in the consideration of the mitigation evidence. Is that, can we say that that was a valid conclusion as to the prejudice prong? The position is that unless the decision itself is... You're picking up on Judge Kuczynski's dissent from the majority opinion. Let's try to frame the question a little bit differently. Let's assume hypothetically, hypothetically, that the state or state court's prejudice decision was legally flawed. Do we review it de novo or do we revand it for the Arizona Supreme Court to reweigh? What is the remedy for that? Hypothetically. I'm not asking you to concede a thing. I'm just looking at, I'm just interested in what the state views as the proper procedure. If we got that far. If you found that there was an Eddings error that had some effect on this double standard, a double homicide, then the first, you believe it took it out of EPA, then you would do de novo review. Okay, so assuming, let's just assume now again for the sake of argument that we're doing de novo review. What result, where would the prejudice conversation end up? I'm sorry? What should be our conclusion if we did review de novo on the question of whether there was strickland prejudice, whether the arguments in mitigation that were added later would have made any difference? The answer is they would not have made any difference. As the trial court found that this new mitigation was not that significant. It wasn't, it would not have changed the sentence. The trial court found that because he was looking at the causation issue improperly. That's not much of an indication of what he would do if we said, wait a minute, you can't do that. And that was wrong as the Arizona law, you were right about what Arizona law was at the time. But the Arizona law was wrong in that regard. And the Supreme Court has since so held and we have since so held. So wash that out and now answer the prejudice question. Any error, if there was error, if it was, if he applied something that made him not able to give effect to this 1985 accident, then the answer is harmless error. But it was the fact that he did not find that this 1985 accident had anything to do with it. In other words, I don't understand how we can get anything out of what he actually said he would have decided. Because if he would, if our premise were, and I don't understand, you don't need to accept this, but if our premise were that it was playing the wrong standard, then we can't, then we have to start from scratch in deciding what the reasonable probability was and not take into account what he said. So if we do that, to go back to Judge Graber's standard, a question, what do we decide? Because you look at the evidence and the only, there is no reasonable probability that given the evidence, the evidence surrounding this 1985 accident was significantly mitigating, more mitigating than the seven non-mitigating factors that the trial counsel had proved at sentencing originally. So it is harmless error at most, if error at all. Well, when we re-weighed the evidence, when we were reviewing at DeNova, we considered the evidence that's in the record and then the evidence that would have been in the record had counsel not acted deficiently, right? That is true. So aren't, isn't one of the aggravating factors a lack of remorse and wouldn't the 1985 accident show that in fact, and the evidence that was in before this judge was that he didn't have any sadness over the 1985 accident, when the evidence that would have been before him was that he was in fact suffered a great grief reaction? Well, first the remorse is not an aggravator or lack of is not an aggravator. It is a mitigator. The court found that he had not proved remorse. Now he said remorse. You can find places in the record where he talks about remorse, but simply by saying it doesn't mean it's true. So if you look at his autobiography, and he simply talks about the, this, this accident, but he doesn't indicate in that letter any sort of remorse for the victims. In the four years between the double homicide and the, you know, the accident, the discovering it, there's no indication in the record it is remorseful. In fact, the indication is quite the opposite. But, Counselor, the reason that's problematic, just so you can make sure to answer Judge Ward's last question, is that the judge said, I don't think he's capable of remorse. He's got this personality disorder. And Dr. Comrie says you can't have the diagnosis of the personality disorder unless you rule out TBI. So that seems to me to be really circular. Well, if there was strong evidence of him having TBI, maybe that would be true. But that's, that's, I don't believe the record shows any sort of strong evidence that he had TBI. I forgot where I, I was, if I, oh, I, I, in, in the remorse, he, his attorney testified that he didn't believe when he was talking about being remorseful. That when man spoke of being remorseful, he did not always believe it. And the judge just looked at the facts and found he hadn't proved remorse. And I don't, I don't believe that the evidence adduced at the subsequent PCR hearing, proved remorse. And would, I mean, is there any evidence that remorse was directed towards the crimes in this case as distinct from the accident? I'm sorry, Your Honor. Well, the discussion about remorse has dealt with the accident, whether he was sorry about the accident, not whether he was sorry about killing these two people. So my question is, is that all the evidence of remorse that there is in the record? Or is there any evidence, whether it's merely the word or otherwise, that he was remorseful for the homicides? He was, I think it's clear in the record, he was remorseful in the sense that he was not going to be with his family anymore, that he felt bad for the victim's family. I don't believe there's any specific thing in the record that where he says he's remorseful for doing the act. I might be mistaken on that. Further questions? There's nothing else. Thank you very much. Thank you, counsel. It's a pleasure. I hope the Court understands that in 2004 or thereabouts, when we were assigned to this case, we raised in the original habeas petition that there was a D1 error because of the causal nexus problem. And we just decided this, Ann Bonk, the McKinney v. Ryan decision. And the first statement you made today was that you have no Eddings claim here. And it would seem to me that you would have said something to the opposite when you started your argument earlier, if you were asserting that. Well, the claim is a Strickland claim. And there's D1 error because instead of considering all the mitigation evidence that Strickland says the judge was required to do, he walked away. He wiped all of it off the table. He violated Strickland. But not at the original sentencing. That's the other interesting thing. Well, we haven't made... I'm sorry? What happened at the original sentencing is not an issue here. That's true. Yes. And as I understand, part of what the district judge here said was he was reading Eddings as applicable only at that stage and not to the prejudice question. That's correct. So you have to be arguing it here as relevant to the prejudice question. And that's what we've always done. Right. I mean, you're not making a freestanding Eddings claim. Correct. You're making the Eddings claim in the context of Strickland saying that the court used the wrong analysis. Right. That's the way we've always presented it. I do want to let you know that Dr. Comer testified. There was a high ‑‑ the probability is high that Mr. Mann had a significant head injury. And he didn't qualify at all his diagnosis, which was post-concussion syndrome. So that is absolutely clear on this record. Post-concussion syndrome in 1985 or at the time of the killings? At the time of the homicide. I mean, what Dr. Comer ‑‑ yes, because what Dr. Comer said is that while he couldn't make a definitive causal connection, he said that the post-concussion syndrome could have contributed to Mr. Mann's disinhibition, his aggressiveness, his poor judgment. So he was ‑‑ Dr. Comer was clearly talking about that post-concussion syndrome in terms of its relationship to the actual crime. Dr. Comer also dismissed the suggestion when he testified, he dismissed the suggestion that Mr. Mann's TBI was related to drugs. He said that the testing he gave didn't allow for that conclusion at all. So I think the ‑‑ So I have a ‑‑ this is a very odd question, I guess. But you just said that the evidence itself that was presented on behalf of the defendant was geared toward demonstrating a causal connection to the crime. And it seems to me that if that's the evidence, then saying, well, you shouldn't do this, you shouldn't do that, that's not true. And to consider it just for that doesn't make a lot of sense. In other words, Edding says you should be able to consider everything, whether it has a connection to the crime or not. But it doesn't require you to consider things that aren't presented to you. And so I guess if the only thing that the evidence related to was causation, then where's the error? Yeah, well, the ‑‑ number one, Dr. Comer wouldn't express an ultimate conclusion about it. I'm not going to comment on that causation question. But the ‑‑ there's abundant evidence unrelated to causation, if that's your question. And that, again, goes to the inaccuracies of the antisocial personality disorder diagnosis. The conclusion that the sentencing judge made that Mr. Mann was a person incapable of remorse, which was highly inaccurate. And, again, although ‑‑ The contrary was by Ms. Miller, is that right? No, that's not correct, Your Honor. The hospital records show that Mr. Mann was having a grief reaction related to the death of the child and her mother in that accident. So it certainly wasn't just Ms. Miller who provided evidence with respect to that. I also want to correct a statement that was made that Mr. Mann was convicted of aggravated assault using a weapon. If you look at his criminal record at ER sites 1347 through 63 and 1950 and out, you'll find that he pointed ‑‑ in 1982, he pointed a gun at somebody. But he wasn't convicted of anything. His probation for a burglary of a Salvation Armory bin was revoked. But he had no conviction for that. And there's no evidence that Mr. Mann ever engaged in any sort of criminal activity that is at issue here. The only evidence on this record from a witness with respect to the before and after behavior of Mr. Mann, before and after the accident, comes from Karen Miller, who said that he suffered extreme depression. And a change in personality that led to this aggressiveness and disinhibition and ultimately at least contributed to the crime. Any further questions? Your time has expired. Thank you very much for your argument. Thank you both for your arguments today and for coming to Pasadena to make the arguments. Case just heard will be submitted for decision. And we are at recess. All rise.
judges: Thomas, McKeown, Wardlaw, Graber, Berzon, Clifton, Callahan, N.R. Smith, Christen, Watford, Owens